is 16-1374 IPR Licensing v. ZTE. Mr. Bell. Chief Judge Rhoads, and may it please the Court. The Court made three errors in this case. First, in its claim construction, it failed to place the claims in context. Specification makes clear that the device that's sending data, and here that's the subscriber unit, must be able to select the channels it uses to send that data. Mr. Bell, you're here representing the owner of a patent, appealing from a proceeding in the Patent Office. I assume you're familiar with patent practice? Yes. Yes. There are ten columns of references cited here, hundreds of references. Do you know why they were cited? I do not. But you're familiar with patent practice, why are references cited by an applicant? To comply with the duty of disclosure. Do you think it complies with the duty of disclosure to bury the only reference that's cited in hundreds of other references? How can, we're dealing with an obviousness issue, how can you be arguing that the claim dimension is unobvious when there are hundreds of cited relevant prior art references cited by the applicant? How can the dimension be not obvious? I think the procedure set up by Congress through the PTAP allows challengers to bring forth the most relevant pieces of prior art. And in this case, they brought forth the Juanda reference and the GPRS reference. And through that procedure, it allows the board and this court to narrow what pieces of prior art we should be focusing on. And so I think that's what happened in this case and it was an appropriate procedural mechanism to do that. In other words, what happened earlier, you don't think that was a violation of the duty of disclosure to file hundreds of references purporting to help the examiner? I do not, when it's available to petitioners to bring multiple actions to the challenge that's obvious. And ultimately, they were successful here. So there is something in the procedure that allows for that and I think complies with the duty of disclosure in this case. They could have disclosed less perhaps, but I think in this case it was appropriate. All right, go ahead. Thank you, Your Honor. So the specification of the 244 patent describes this ability to select channels in sending data as an important feature of the present invention. And there, in fact, are no contrary arguments. The district court in the parallel litigation... Where's the language of important feature of the present invention? Certainly. It's at page 49, column 4, lines 23 to 25. And in that place, it talks about it's important that the device sending data be able to allocate channels quote, only when needed. Isn't all of that under the second paragraph that begins with in one preferred embodiment? It is, but it is reflective of key features throughout the patent. For example, it's mentioned again on A52, column 10, line 49, where it says the device sending data must be able to send it only when there is actual data presented. In other words, the device has some measure of control over when to use the channels, what channels to use, how many, and so forth. It's a key feature of this invention to increase efficiency. So instead of having the bandwidth all to itself, it will know that it can allocate, for example. It will also know... And allocation is not in the claim language, the claim one claim language, at least. Correct, Your Honor. So in this case, the claim language talks about the assigned physical channels. The claim language says that it is a subscriber unit that uses these assigned physical channels to communicate with the network. So that's what the claim language provides. What the parties have agreed is undisputed in this case and actually proposed by the petitioner was that this communication involves two steps. First, an initial assignment by the network of the available channels to the subscriber unit. And there's no dispute on that. A station, something other than the subscriber unit, can and does do that. On the second step, the subscriber unit allocates those. And it's on this step that parties have a dispute. But that's not an actual claim step. It is not... Except in claim 15, which you don't argue separately, right? Correct. On claim 15, Your Honor, we would submit that the difference there is not that it adds the allocation and deallocation, but that it specifies what part of the subscriber unit components are going to do that particular feature. And it says the processor is further configured to allocate and deallocate. And of course, in the claim language, there are multiple components, one of which is a transceiver, which actually sends the data out. Another one is a processor that can do different things. You could conceive of the functions of allocating and deallocating as being done by the transceiver. In the various specification passages that you rely on, does something other than the processor, the actual brains of the subscriber unit, do the allocating? I don't think it specifies that. But what it does specify in column 6 of the patent, excuse me, column 9 of the patent, is that the various components can be arranged in different ways. So the invention is largely indifferent to how the components within the subscriber unit are arranged. For example, the protocol converter. And that's one of the key components that I'd like to talk about. It says it can be a separate component. It can be integrated fully with the subscriber unit. Are you at line 50 or 52? Where are you on column 9? About halfway down, starting with figure 6, shows a terminal. And then the discussion following that puts forth various iterations of how the components can be described. But what the common theme is throughout, all of the discussions throughout the patent that talk about, explain how the sending data is done, they all have a common feature. And that's the protocol converter, which in turn has a bandwidth management function. That is consistent throughout. Whenever there is present invention language, that is there. In all of the figures that depict sending data, there is a protocol converter ultimately. And when you refer to present invention language, I mean, there are radically different kinds of present invention language. One feature covered by the present invention, or at another extreme, the present invention requires, that is the words present invention all by themselves don't tell you whether this is a necessary part of everything covered by the invention. It matters what other words surround present invention. And I'm not sure we really have any kind of language of the sort that we have relied on in the past in the absence of claim language to say the specification makes clear that something not expressively referred to in the claim is nevertheless necessary. So I would agree with the first part of Your Honor's statement. It's absolutely true that there are no magic words. It's all a contextual reading. And there's nothing here that says the present invention shall be the following and then lists everything in the present invention. That's not here either. But we know that the limiting of the claims based on the specification doesn't have to be as expressed as that. And I would submit that in this case... We are under a broadest reasonable interpretation standard, right? So that we and the board get to say in the absence of claim language, if you're telling us something is limited, you have to show us that it really would be unreasonable to conclude otherwise, conclude that the spec doesn't actually limit this, limit it in a way that you can limit in the absence of claim language, which is already something of a hurdle. That's true. At the same time, cases like the Microsoft case and others make clear that the broadest reasonable interpretation does not give license to an incorrect interpretation. It just has to be the broadest reasonable one. And that must be read in light of the specification. So you see cases like the PPC Broadband case as well that had a very general claim around the word around. And the dispute was over whether the specification limited and this court made very clear that you have to read it in light of the specification to breathe life into that claim. You cannot just go and grab a dictionary definition and have it be the broadest reasonable construction. You want to turn to Claim 8 briefly before your time runs out? Yes, Your Honor. Thank you. On Claim 8, so putting aside the claim construction issue, as to Claim 8, the board's obviousness determination was flawed because petitioners introduced no evidence whatsoever of a reason to combine the key prior art feature from the GPS-GPRS protocol. That's one protocol. And that's where the board found the feature, the quote, maintained feature, located. There is no motivation whatsoever to combine that with a completely separate protocol, the CDMA protocol, in Claim 8. What kind of evidence would be required then? Give us an example of what would be sufficient motivation to combine that the board pointed to. For example, if there were expert testimony saying these two things were close enough that it would be a mere design choice to plop the one into the other, and there were no technical barriers to doing that. Well, isn't that what they were really trying to get to? I mean, I don't recall Dr. Stark hindsight, but isn't that another way of construing what he was saying, that it was ultimately done and there were no problems, and so we're going to sort of move that back? Not at all, Your Honor. So the hindsight there was in response to what they said our argument was, which was that it was technologically impossible, which we never contended that was technologically impossible at all. We contended that it was their burden to come forth with evidence that it was possible and or other evidence showing why you would take these two completely different standards and ad hoc kind of buffet style, take one out of one and put it with another and then combine that all into Juanda. Can I ask you about something that the board did not rely on so it might make a difference only between remand and reversal? And that's what Dr. Bins said. Dr. Bins said there was a draft version of a CDMA covered protocol or standard WMTS or some... WCDMA or UMTS. UMTS, UMTS. And maybe he said, I'm not sure, skilled artisans knew about that and that had this maintenance ability for CDMA in it and it's true that the board didn't say anything about that unless I'm misremembering, but why would what Dr. Bins say might not be enough evidence to support a finding of the sort that the board made, maybe a finding on remand, but as an evidentiary matter, what's insufficient about what Dr. Bins said? Well, I think it's very hard to answer that unless it's tested against other expert testimony to the contrary and that would certainly be fleshed out in a proceeding and there may be competing views on that and that's precisely the type of thing that the board is empowered to figure out and why we shouldn't be looking at it here and it's certainly not evidence to affirm. And so the short answer is, it's hard to say. It's hard to say, given the technical nature of the things here and the different standards are notoriously difficult to change, there's inertia, there's reasons why, even if it's a great idea, you might not want to import one feature from a standard into another, so there's all kinds of barriers that could come into play. But ultimately, what the board relied on was three things. The hindsight that we talked about, which is the fact that it was eventually done, which Supreme Court precedent and this court precedent says is not enough, but it made another important error there. It actually shifted the burden to the patent donor to show that there was no evidence that it would have been obvious and that is completely proper and foreclosed by this court decision in Magnum Oil. That's exactly what happened in Magnum Oil. And the third thing the board pointed to was a reference in Jawanda itself that said, you can implement the dual-mode device of Jawanda in different protocols. But what it didn't say is, you could take one feature from one of those protocols and a couple from another and thereby implement Jawanda. Okay, why don't you save the rest and read about it. We'll restore it in two minutes. Thank you. I'll see you on the other side. Thank you. Good morning. Good morning, Your Honor. It's Charles McMahon for the petitioner appellees. May it please the court. The 244 patent claims an obvious combination of well-known features and the board was correct to conclude that those features were obvious and to cancel all the challenge claims. There are a few disputes before the court and I plan to address three main points. The first is that on the point of claim construction, the board was legally correct to conclude to construe the very simple phrase assigned physical channels in the way that it did. On the question of obviousness, the board's factual findings are supported by substantial evidence across the board including as to CDMA and Claim 8. Do I understand right that if you're right or whether the board is right about that claim construction point, the other side doesn't at that point dispute obviousness for anything but Claim 8? That's what I understand from the briefing. Correct, Your Honor. Can you talk about Claim 8? Sure. Do you want me to just begin or do you have a specific question? Well, I guess it seems to me that the answer, if you would, I guess a couple of points that were discussed that what the board did say is not sufficient because it's infected by hindsight and there really wasn't a basis for our finding or a cited basis for our finding of a motivation to do for CDMA what, now by assumption, the GSM standard said you can do for TDMA and so at a minimum, a vacator and remand would be necessary and then my additional question is is there actually, if you put aside Dr. Bims it seems to me there isn't actually sufficient evidence but maybe Dr. Bims might supply such sufficient evidence but we can't decide that. That would have to be something requiring new findings by the board. All of that. I'll try to unpack that one at a time. Beginning with the claim, Claim 8 is a very simple dependent claim. All it says is use CDMA as the cellular network and the cellular transceiver. Jawanda says exactly that. The board pointed to that. That's the evidence that petitioners cited in their petition originally. But Jawanda doesn't say use every feature in the GSM standard or even the GPRS piece of the GSM standard particularly the, what is it, packet control protocol context feature and you can use that for CDMA. It doesn't say any of those things. Jawanda is a very open-ended suggestion. Jawanda at its core is describing the idea of using two networks much like the 244 patent saying you've got a Wi-Fi network and a cellular network you can switch back and forth and send data grains as Jawanda calls them between the two as needed. But in the context of describing that it says when you use a cellular network you can use any network you want. It's very open-ended. You can use any current or any future cellular network and it gives CDMA and GPRS as examples. So it's giving a broad invitation to say go out and use whatever cellular features you want to use. That's not material to what I'm teaching you. What I'm teaching you is that you can use that on one side for the cellular connection. But didn't the obviousness case putting aside Claim 8 depend on, I think the board said, Jawanda doesn't actually teach the maintaining the cell connection while you're busy using the Wi-Fi. But it's reasonable to combine, to find that in the GSM standard and reasonable to combine them. But I didn't see where there was evidence to say there was a motivation to and ability to, two separate things, ability to and motivation to do the same kind of combination with a CDMA. Well, the reason we're talking about an obviousness combination here is that the two references are Jawanda and the GPRS standards. And the GPRS standards provides the idea of maintaining a communication session. The board gave some credit to the disclosure in Jawanda as coming close to describing that, but said we're not sure that it's expressed in Jawanda, but it's certainly provided in the GPRS standard which we're combining with Jawanda to provide this obviousness combination. Right, so what would be missing, as far as I can tell from here, is there's nothing that says, oh, here's a CDMA standard, and since Jawanda says you can use CDMA, you can combine the Jawanda to two systems idea with not only the GPRS standard, but also separately from the CDMA standard, but at the time, at least according to the board's findings, putting aside Dr. Bims and the draft, the other standard, there's no reliance on anything like that on the CDMA side. But again, the combination is Jawanda and GPRS, and GPRS gives you that. In other words, GPRS tells you in the context of a cellular communication network, you can use a PDP context to maintain a communication session using the claim language. So that comes from GPRS, right? And Jawanda tells you you can use GPRS. Those are the two documents we're combining for the 103, that the board combined for the 103 combination. In addition to that, all claiming requires is the suggestion that you can use CDMA, and Jawanda says that too. That's exactly commensurate with the scope of Claim 8. This division between the two standards is a false assumption. Jawanda provides all of the connections that you need to arrive at everything that's in Claim 1, as well as everything that is in Claim 8. And the board relied on KSR, and basically, I'm paraphrasing. I don't remember the CDMA part of KSR. Well, what the board said... I mean, this is really context, technology, fact-specific stuff. Understood. Appendix 32 to 33, which is where the board addressed this, the board provided a quote from KSR, and I don't have the exact quote. I'm going to try to paraphrase it, but it said, if a technique has been used to improve one device, for example, a GPRS device, and a person of ordinary skill in the art would recognize that it would improve similar devices, for example, CDMA... Right, but that's the piece that I guess I'm not seeing board-cited evidence for. Board-cited evidence that said an ordinary skilled artisan would recognize that the kind of... the technique described in GPRS would improve, would be possible for, would improve, would benefit users of the CDMA system. But GPRS provides this feature. It was part of the GPRS disclosure at the time. It's not dependent on the type of channel that's used. It was a feature of the GPRS system. And what the board is saying is that feature is easily transferable over to CDMA. What IPRL argued below was, no, it's not. It's incompatible. GPRS uses TDMA channels. CDMA uses CDMA channels. The two won't work. And the board said, that's not true. First of all, you haven't... And this is where they argue that the board shifted the burden. The board didn't shift the burden. The board followed the quote of KSR. And just to finish that quote, it says, if the things that I read before, then the technique is obvious unless its actual application is beyond his or her skill. And the board looked to IPRL and said, have you presented any evidence that's beyond his or her skill? It's not shifting the burden. It's saying, have you rebutted the prima facie case that petitioners presented? And they tried. They made an argument. They said that they're incompatible. But after that response, we deposed their expert, Dr. Stark, and he admitted, actually, they're not incompatible. In fact, they were eventually put together. It wasn't ever impossible. Thank you. I'd be happy to go back and address the claim construction question. The fundamental point on claim construction is that the claim language is just assigned physical channels. There's nothing more to the claim language. I don't think there's any dispute that the plain and ordinary meaning of assigned physical channels does not include the limitation that IPRL has tried to hang on it. Their argument clearly is one of specification disclaimer, but there's just no disclaimer there. The specification provides examples, but there's nothing in the specification to suggest that any of those are limiting examples. And the last point I would address is that there was a lot of debate in the briefing about new arguments. I think it's clear from the record that petitioners did not make new arguments. Our arguments were consistent from petition to reply and through this appeal, both on the claim construction issue as well as on claim agency. I'm not sure it matters at this point whether they were consistent, but really you did change the proposed claim construction to once have this word selected in it to not have the word selected in it, which is kind of the idea that they're getting at. I'm not sure it matters. I mean, you may be right about the claim construction, but no change at all? I agree that it does not matter, but I also would point out that the constructions that we presented in the petition and in our reply were exactly the same. They used exactly the same words. There was an argument about what those words mean because in its response... And then in the ultimate claim construction, the board... Resolved that dispute... Resolved it by taking that word out. Right. I don't think that makes it different. There's no difference between our original proposed construction and what they adopted. They're the same scope, slightly different words. The board removed two words to resolve what was clearly a dispute between the parties about what that construction meant. Why did the board not rely on Dr. Bims? I'm not sure that I can answer that question. Did you present... Rely on what he said? Is that like 728, 734 or so of the joint appendix? Right. It was in the petition, and I think if you look back through the record, there was really not a whole lot of dispute about Claim 8 below that the amount of briefing dedicated to Claim 8 on both sides was relatively small. So, I don't think there was a lot of back and forth, but I agree that that evidence from Dr. Bims certainly supports the conclusion of obviousness in this case and is in the record, but it does not appear to be something that the board specifically cited. If there are no further questions, then we respectfully ask that the board affirm the... Thank you. Thank you. Just a few brief points, Your Honor. First, on Claim 8, I pulled their petition just to double check, and all they have in support of their petition for Claim 8 is a single sentence from Juwan. That's it, and that's the one that says you can implement this protocol or that protocol. There was nothing about all the discussion we just heard about, reasons you might take some from one and the other. Maybe it was technologically feasible. Maybe it wasn't. We simply don't know on this record, and even if you accepted Dr. Bims' testimony, Judge Toronto, that was no more or less than exactly what the statement was as well, so it would provide no additional support. It didn't provide the motivation to combine and just observe that Juwan has said you can do it in one or the other. Was your specification the first... The existence of this maintenance ability in GPRS communicates, does it not, that people in the art, the people connected with the formulation of an international standard, right, a standard, saw a benefit in being able to maintain a cellular channel while you were at Starbucks on Wi-Fi? I guess so. So why would that benefit not be understood to be something you would want if you were on, what was then, I guess, the Bell Atlantic wireless system, the CDMA? So a couple of responses. One, we know at the time it wasn't included, so maybe it would have been desirable, maybe it wouldn't. It wasn't included, and so what we need is not just that it would be nice to include, but that somebody would have thought to do it and it would have been successful. And certainly there's nothing about that in the petitioner's petition, and I would emphasize that it's their burden to come forward. And so we would ask that outright reversal would be appropriate here because they didn't come forward with enough. Even when given an additional bite of the apple on reply, and it was a new argument there, the board didn't come up with enough, and so reversal is appropriate there. And then I would note one more thing. It absolutely does matter for new arguments. It matters because in invasive, that's exactly the problem that this court faced. There were new arguments raised, and this court sent it back so that the board could properly give the patent owner their procedural rights, their due process rights and the APA, and that in and of itself was a problem. And as to your point about the claim construction, and maybe it doesn't matter because it's a question of law, I would submit in the power integrations case, there the problem was the board did not account for the district court's construction. And actually, the same exact thing happened here. The board did not account for the district court's construction. Well, it's a little difference, right? At least a little difference, because I think in power integrations, there was complete silence, and here the board did acknowledge that they used a different standard, right? Correct. But power integrations made it clear that you not only needed to cite it, but actually meaningfully consider it if you're going to depart from it. And for that reason, this court sent it back. So merely because it's a claim construction issue doesn't get the board out of the box having to follow the correct procedures. Final sentence. For those reasons, we would ask outright reversal on the claim construction, outright reversal on claim 8, and failing all that at a minimum. These are distinctly new arguments raised in reply that under an evasive absolutely require a vacation. Thank you. We thank both sides in that case.